UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
PREMIERETRADE FOREX, LLC,                       :
                                                :
                        Petitioner              :
                                                :
        - against -                             :
                                                :
                                                :
FXDIRECTDEALER, LLC,                            :
                                                :
                        Respondent.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 16, 2013

12 Civ. 7006 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      Petitioner PremiereTrade Forex, LLC ("PT") brings this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, to confirm an arbitration award in its favor.  Respondent FXDirectDealer, LLC ("FXDD") cross-petitions to vacate or modify the award.  PT holds seminars and sells books and software on foreign exchange trading. (Dkt. No. 14 ¶ 7.)[1]  FXDD is a registered retail foreign exchange dealer.  (Id. ¶ 6.)  They are parties to an "Introducing Broker Agreement" ("the Agreement") which provides that FXDD will pay PT a brokerage fee or commission for introducing foreign exchange customers to FXDD.

      The Agreement has a broad arbitration clause calling for the arbitration of "all controversies, causes of action, and equitable claims" under the commercial dispute rules of the American Arbitration Association ("AAA").  (Dkt. No. 1 Ex. A ¶ 34.)  The record is silent on how the three arbitrators were selected, but it would be customary for each party to select one arbitrator, and for the two to select the third.  The parties submitted their dispute over brokerage

---

[1] Dkt. No. 14 is FXDD's Cross-Petition to Vacate or Modify the Arbitration Award.  References to the parties' submissions will be by docket number.  Dkt. No. 1 contains PT's petition to confirm the award.  Dkt. No. 15 is FXDD's memorandum in support of its cross-petition, which was amended by the addition of a table of contents without alterations to the substance in Dkt. No. 25.  Dkt. No. 18 is PT's memorandum in support of its motion to confirm the award/in opposition to FXDD's cross-petition.  Dkt. 26 is FXDD's reply memorandum.

fees and commissions which PT claims FXDD owed for the customer introductions PT made to FXDD. On May 2, 3, and 4, 2011, the three AAA arbitrators heard testimony from seven witnesses and considered more than 150 exhibits to resolve the parties' dispute concerning fees allegedly owed to PT by FXDD.

## BACKGROUND

After hearing testimony about which party had the duty to ensure that customers introduced by PT were correctly identified on FXDD's records as having been introduced by PT, the panel held that it need not decide the issue. It found instead that FXDD's own records concerning accounts for certain customers constituted an admission by FXDD that PT introduced those customers. (Dkt. No. 1 Ex. B (arbitration order) at 5-6.) The panel concluded that FXDD owed PT fees to any extent they were unpaid for those customers. Accordingly, the arbitrators ordered an audit to provide the information needed to make an award.

FXDD recommended Titus, a Milwaukee-based audit firm that FXDD had used on a prior occasion, and PT agreed to FXDD's recommendation. Titus calculated the rebates owed based on FXDD's records and issued two reports. The parties responded to the reports through rounds of comments to Titus, briefings to the panel, and telephone conferences.

Based on the entire record, the panel (1) ordered FXDD to pay Category 1 and 2 claims totaling $945,612.74, but held that PT failed to establish its Category 3A claim of $4,851,157.86; (2) awarded PT $177,346.32 in costs and $122,040.00 in attorney's fees pursuant to Section 34 of the Agreement, and (3) granted post-Award interest at a rate of 9% on damages, fees and costs that are unpaid within thirty days of the award, excluding amounts PT already paid to the AAA. (Dkt. No. 1, Ex. B at 11.) The three arbitrators set forth their award in a thorough, well-reasoned and unanimous opinion, dated July 20, 2012.

When FXDD failed to comply with the arbitrators' award, PT filed its petition, dated September 17, 2012, to confirm the award. In addition, PT seeks attorney's fees and costs for bringing this action, pre-judgment interest from July 20, 2012 (the date of the award) to the entry of judgment at a rate of 9% (Dkt. No. 1 at 5-6, 8), and post-judgment interest at 9% from the date of judgment until PT is paid in full (id. at 8; Dkt. No. 18 at 25). On October 18, 2012, FXDD filed its cross-petition to vacate.

## DISCUSSION

### I. The Scope of Judicial Review of Arbitration Awards

"The role of a district court in reviewing an arbitral award is 'narrowly limited,' and 'arbitration panel determinations are generally accorded great deference under the FAA.'" Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011) (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997)). "[A] motion to vacate filed in a federal court is not an occasion for *de novo* review of an arbitral award." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004). "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Id. (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003)); see D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

The Federal Arbitration Act ("FAA") provides four specific statutory grounds for vacating arbitration awards. Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011); see 9 U.S.C. §§ 10(a)(1)-(4). The grounds enumerated in Section 10(a) are: (1) corruption, fraud or undue means in procurement of the award; (2) evident partiality or corruption in the arbitrators; (3) specified misconduct on the arbitrators' part; and (4) where the arbitrators exceeded their

3

powers. Id.  In Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576, 585-86 (2008), the Supreme Court suggested that the statutory grounds for vacatur were the exclusive basis for vacatur.  The decision cast doubt on whether "manifest disregard" survives as a basis for vacatur.  The Second Circuit read Hall Street, however, as "reconceptualiz[ing] [manifest disregard] as a judicial gloss on the specific grounds for vacatur," and with that interpretation, held that manifest disregard "remains a valid ground for vacating arbitration awards."  Stolt-Nielsen S.A. v. AminalFeeds Int'l Corp., 548 F.3d 85, 94-95 (2d Cir. 2008).  The Supreme Court held that it would not decide whether "'manifest disregard' survives our decision in [Hall Street], as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."  Stolt Nielson S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1768 n.3 (2010).  Thus, the Second Circuit "continue[s] to recognize [manifest disregard] as a valid ground in the wake of the Supreme Court's decision[s]."  Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 452 (2d Cir. 2011).

FXDD relies on three grounds for vacating the award: the arbitrators' alleged misconduct, excess of authority, and manifest disregard of the law.  FXDD also relies on 9 U.S.C. §§ 11(a) and 11(b) in support of its alternative argument for modification of the award.

**II. Alleged Errors in the Titus Methodology**

Modification under 9 U.S.C. § 11(a) is "generally limited to patently obvious mistakes on the face of the award . . . .  Section 11(a) does not permit modification where the award is not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute . . . ."  Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011) (quotation omitted).

Vacatur of an arbitration award is permissible "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to [S]ection 10(a)(4) . . . . The focus of our inquiry in challenges to an arbitration award under section 10(a)(4) is whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue." Jock, 646 F.3d at 122 (quotations omitted).

As to FXDD's request for modification pursuant to Section 11(a), FXDD argues that the arbitrators disregarded the Agreement's provision for calculating damages; and instead adopted a method based on the Titus Report that was at odds with the method prescribed by the Agreement. (Dkt. No. 14, ¶¶ 44, 45.) The Agreement sets the broker fee as "2 pips per round turn lot traded in the major currency pairs (EUR/USD USD/CHF, USD/JPY, GBP/USD)." (Dkt. No. 1, Ex. A Page 10 of 12, ¶ 3).[2] Relying on the Titus Report, the arbitrators accepted a calculation based on "$10 per $100,000 lot traded." (Dkt. No. 14, Ex. 8 Page 5.) Whatever else might be said about this argument, it is clear that FXDD is not seeking to correct a numerical miscalculation. Instead, FXDD seeks a review on the merits of the arbitrators' method for calculating damages. FXDD made this objection regarding Titus' pip calculation in its September 12, 2011 letter to the panel (Dkt. No. 14, Ex. 9 at 1-2), and again in its February 1, 2012 response to Titus' Supplemental Report (id., Ex. 18 at 3-5). Section 11(a) is not intended to enable relitigation of a substantive controversy. See Companhia de Navegacao Maritima Netuma v. Armada Parcel Serv., Ltd, 2000 U.S. Dist. LEXIS 558, at *18-19 (S.D.N.Y. 2000)

---

[2] Titus equates one pip to $10, based on March 2012 pip values at the time Titus calculated the rebates. In its response to FXDD's critique of its method, Titus explained that one pip (or $10) per $100,000 lot traded is the same as 2 pips per round turn lot of $200,000. (Dkt. No. 14 Ex. 19 at 2.)

("[T]he word 'miscalculation' implies inadvertence or an error caused by oversight."). No inadvertent, mathematical miscalculation appears on the face of the opinion. The arbitrators' choice to adopt Titus' method was a reasoned determination on a substantive issue falling outside the scope of Section 11(a). Id. at *22 (quoting Oceana Shipping Corp. v. Thos P. Gonzalez Corp., 442 F. Supp. 997, 1000 (S.D.N.Y. 1977)).[3]

FXDD's next contention under Section 10(a)(4) is that the arbitrators exceeded their authority by improperly rewriting the Agreement. This contention has no merit. FXDD's own explanation of the Agreement's rebate scheme is that the rebate amount would be $10 per $100,000, if the counter currency is USD (e.g., EUR/USD). (Dkt. No. 15 at 13.) It is only when the counter currency is not USD (e.g., USD/JPY) that the rebate amount varies, based on the pip value of the counter currency which may not be $10. FXDD's objection is that the arbitrators relied on a standardized pip value of $10 without regard to the currency pair, while the Agreement calls for the proper calculation of pip values for each pair. (Dkt. 26 at 3.) The arbitrators' decision to use the expression of $10 per $100,000 did not disregard the Agreement provision, but rather adhered to its essential mandates. There is nothing objectionable in using plain English to express the calculation of the amount owed, which after all was not going to be expressed in pips, but rather in dollars.

The Court notes that in Titus' letter dated March 22, 2010 to the panel, Titus identified the method prescribed by the Agreement as the basis for its calculations and explained that "calculations are based on 2 pips per round turn exactly as is provided in the IB agreement."

---

[3] FXDD also makes much of Titus' alleged error in calculating rebates based on a total volume instead of a round-turn basis. As with the issue of the standardized pip values, FXDD concedes that it did in fact raise this issue with the arbitrators (Dkt. No. 26 at 4). The arbitrators' decision to adopt Titus' methodology, over FXDD's objections, evidences a deliberate choice, not an inadvertent error.

(Dkt. No. 14, Ex. 19 at 2-3.)  Upon review, the panel agreed that the Titus method as described in the letter was "sound and appropriate."  (Dkt. No. 1, Ex. B at 7.)  There is no basis for FXDD's contention that the tribunal rewrote the provision; to the contrary, the panel agreed with Titus that its method of calculation was as provided in the Agreement.  As for the calculations performed for the unspecified currency pairs, FXDD concedes that the Agreement was silent, setting forth no express term that the arbitrators could have contradicted.  (Dkt. No. 15 at 13.)  There is no legitimate ground for vacating the award here, "as long as the arbitrator is even arguably construing or applying the contract or acting within the scope of his authority." ReliaStar Life, 564 F.3d at 86.

The arbitration clause in the Agreement plainly gave the arbitrators the authority to award damages for breach of that agreement.  (Dkt. No. 1, Ex. A ¶ 34.)[4]  The damage award had to be expressed in dollars, not pips.  FXDD's objection to the amount awarded relates to the correctness of the arbitrators' decision, not to the arbitrators' authority to render it.  FXDD's request to vacate the award on the aforementioned grounds must be denied.

### III. Category 1 Damages And Attorney's Fees

FXDD seeks vacatur and modification of the award, under 9 U.S.C. 10(a)(4) and 9 U.S.C. § 11(b), respectively, to subtract Category 1 damages ($316,407.34) and attorney's fees ($122,040.00) from the award.  FXDD argues that the arbitrators wrongfully awarded damages based on the underpayment of rebates (Category 1 rebates) because that issue was raised for the first time in post-hearing closing briefs.  (Dkt. No. 14, ¶¶ 51, 53, 56.)  FXDD complains that as a result, it did not have the opportunity to conduct discovery or present witnesses on underpayment

---

[4] The Agreement reads: "All controversies, causes of action, and equitable claims arising out of or relating to this agreement . . . shall be resolved by binding arbitration . . . .  [t]he parties authorize the arbitrator(s) to grant equitable relief, as well as monetary damages."  (Id.)

at the hearing.  (Id. ¶ 58.)   PT maintains that it raised the issue at the outset in the Amended Claim, its pre-hearing brief and at the hearing itself.  (Dkt. No. 18 at 15-16.)

FXDD does not contest that the determination of Category 1 damages was arbitrable.  The Agreement has a broad arbitration clause mandating the arbitration of "all controversies, causes of action, and equitable claims arising out of or relating to this agreement, or the business dealings between the parties," and authorizing both equitable and monetary relief.  (Dkt. No. 1, Ex. A ¶ 34.)  It contains no specific prohibitions on that authority.  Further, FXDD does not dispute that PT requested Category 1 damages (albeit belatedly according to FXDD).  The relief granted was not sua sponte, but at the request of one of the parties.  FXDD's Section 10(a)(4) claim must be rejected since the arbitrators acted within the scope of their authority.  See Fahnestock & Co., Inc. v. Waltman, 935 F.2d 512, 515-16 (2d Cir. 1991) (finding that the arbitrators did not exceed their authority where the issue was arbitrable and submitted by the parties).  FXDD's Section 11(b) claim fails for the same reasons.  See Vertical UK LLP v. Dundee Ltd., 2011 U.S. Dist. LEXIS 63136, at *7-8 (S.D.N.Y. 2011).

FXDD contests the arbitrators' award of attorney's fees because the Agreement does not authorize a "separate award of attorney's fees apart from actual expenses incurred in the arbitration."  (Dkt. 14 ¶¶ 63, 65.)  FXDD's assertion that the Agreement only authorizes costs and expenses, but not attorney's fees, is incorrect.  The arbitration clause plainly includes attorney's fees: "The prevailing party, as determined by the arbitrator(s), shall be entitled to recover from the other party all costs and expenses (including reasonable attorney's fees) incurred in connection with the arbitration."  (Dkt. 1, Ex. A ¶ 34.)[5]  Even without the specific

---

[5] Nor does the word "incurred" suggest that PT was required to have already paid their attorneys to recover the claimed amount from FXDD.  Rubin v. Empire Mut. Ins. Co., 25 N.Y.2d 426, 429 (N.Y. 1969) ("Suffered means paid; incurred means become liable for.").

language here, the Second Circuit "recognize[s] an arbitrator's authority to grant attorney's fees absent a specific prohibition as long as the parties have agreed to submit the issue to arbitration." Schaad v. Susquehanna Cap. Grp., 2004 U.S. Dist. LEXIS 15772, at *18-19 (S.D.N.Y. 2004) (citing Synergy Gas Co. v. Sasso, 853 F.2d 59, 64 (2d Cir. 1988)).  The Court notes that in the arbitration proceeding, FXDD, too, requested attorney's fees.  It is now foreclosed from arguing that attorney's fees were beyond the panel's authority simply because the award was unfavorable to it.  FXDD's argument that the award of fees was beyond the arbitrators' authority is rejected.

FXDD's other objections are without merit.  FXDD insists that PT was required to include records to support that it "actually incurred" fees.  (Dkt. No. 14 ¶ 64.)  FXDD cites no authority[6] in support of this position, nor is there such a requirement that the prevailing party produce records of actual expenditures.  See Fiero Bros., Inc. v. Southwest Sec., Inc., 2000 U.S. Dist. LEXIS 5566, at *13 (S.D.N.Y. 2000) (confirming a fee award derived from estimates rather than billing records and receipts because the parties' failure to submit documents "did not remove the fees and expenses issue from the panel's consideration.").  FXDD contends that PT was not a "prevailing party" because PT only recovered on Category 1 and Category 2 damages but did not recover Category 3A damages.  The Court has no difficulty concluding that a recovery of $ 945,612.74 was substantial relief in light of the scope of the dispute concerning unpaid commissions under the Agreement.  Sykes v. RFD Third Ave. I Assoc., LLC, 833 N.Y.S.2d 76, 77-78 (N.Y. App. Div. 2d Dep't 2007).

PT seeks fees and costs for filing the instant petition.  Normally, this is not allowed absent statutory authority; and the FAA does not authorize fees in actions to confirm arbitration awards.

---

[6] Purdue v. Kenny A., 559 U.S. 542 (2010) did not involve attorney's fees determined by an arbitration panel, nor did it involve confirmation of an award.

N.Y. City Dist. Council of Carpenters Pension Fund v. Eastern Millenium Construction, 2003 U.S. Dist. LEXIS 21139, at *8 (S.D.N.Y. 2003).  A court may exercise its inherent equitable powers to award fees, however, when opposing counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892, 898 (2d Cir. 1997) (quoting Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991)).  A court may award fees when the party challenging the award "refuse[s] to abide by an arbitrator's decision without justification."  Id. (quoting Int'l Chem. Workers Union v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985)).

   The arbitration clause's reference to fees is not sufficiently broad to directly encompass actions to confirm the award.  The language refers only to "fees . . . incurred in connection with the arbitration."  (Dkt. No. 1 Ex. A ¶ 34.)  The Agreement does not authorize fees for any and all related proceedings.  Cf. N.Y. City. Dist. Council of Carpenters Pension Fund v. Timberline Interiors Inc., 2011 U.S. Dist. 150400, at *8-9 (S.D.N.Y. 2011) (granting fees where the arbitration agreement specifically permitted them "upon the confirmation of the arbitrator's award . . . or on any appeal therefrom . . . .").  Nonetheless, PT urges the Court to exercise its equitable powers on the grounds that FXDD acted in bad faith in challenging the award where the arbitration clause included a "final, binding and non-appealable" provision.  This is insufficient to establish bad faith conduct.  See N.Y. Hosp. Med. Ctr. v. 1199 Nat'l Health & Human Servs. Employees Union, AFL-CIO, 2000 U.S. App. LEXIS 31323, at *5 (2d Cir. 2000) (finding lack of bad faith in bringing a petition to vacate, notwithstanding clause in the agreement providing that the award of the arbitrator "shall be final, conclusive and binding.").  FXDD defended its position in the arbitration proceeding and has appeared in the present

proceeding to challenge the award. Accordingly, the Court declines to award PT fees and costs for preparing its petition to confirm the award.

## IV. Refusal to Re-Open the Hearing and Permit Direct Questioning of Titus

Courts may vacate arbitration awards "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Arbitral determinations will not be reopened for review under this provision "except where fundamental fairness is violated." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).

Arbitration procedures are generally more relaxed than those that govern in federal court. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) ("Although those procedures might not be as extensive as in federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration.'") (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 628 (1985)). Arbitrators possess broad latitude to determine the procedures that govern their proceedings, to hear or not hear additional evidence, to decide if evidence is relevant, material, or cumulative, and otherwise restrict the scope of evidentiary submissions. See Commercial Risk Reinsurance Co. v. Sec. Ins. Co., 526 F. Supp. 2d 424, 428 (S.D.N.Y. 2007).

FXDD alleges that the arbitrators engaged in misconduct when they refused to permit FXDD to reopen the record to consider damages evidence from their own expert, or directly cross-examine Titus representatives, including the author of the Titus Report. (Dkt. No. 14 ¶¶ 74, 76; Dkt. 26 at 7.) FXDD takes issue with the matching procedure used by Titus to identify unpaid broker fees, whereby Titus matched a list of PT's clients to FXDD's accounts based on email

11

addresses, names, and zip code. Yet FXDD had many opportunities to object to Titus' matching procedure in its written responses to Titus' reports, and in fact identified instances of alleged failure in the matching procedure. (Dkt. No. 14, Exs. 9, 18, 20.) FXDD's objection relates not to missed opportunities to be heard, but to the arbitrators' decision not to credit FXDD's criticisms. With respect to FXDD's allegation that the arbitrators did not permit FXDD the opportunity to directly question Titus at the telephone conferences, FXDD does not dispute that it was present at the conferences and permitted to make objections. Nor is there any dispute that FXDD initiated the selection of Titus as an auditor. Having seen the Titus reports and not liking them, FXDD wanted to bring on a new expert, presumably one who would be more favorable. The arbitrators' decision not to re-open testimony to receive potentially cumulative evidence from a new damages expert was within their discretion. Besides, FXDD had more than ample opportunity to oppose Titus' calculations. Under these circumstances, FXDD was not deprived of a "fundamentally fair" proceeding.

   Contrary to FXDD's assertion that the arbitrators refused to hear damages evidence, the arbitrators considered FXDD's objections on the issue of damages. (Dkt. No. 1, Ex. B at 6.) FXDD commented on Titus' methodology during a November 28, 2011 telephonic hearing before the Tribunal. (Id.) With respect to Titus' January 27, 2012 Supplemental Report, FXDD was given the opportunity to and did comment in writing on it. Titus addressed each of FXDD's criticisms in detail in its March 22, 2012 letter to the tribunal, which the panel considered. (Id. at 3, 6, 7.) The panel then held another telephone conference on May 30, 2012 to entertain objections. In the end, the panel found that FXDD's criticisms of Titus' reports were without merit, stating that "the tribunal is fully satisfied that the methodology used by Titus in all its work reported to the Tribunal is sound and appropriate and that Titus' August 26, 2011 Main

Report, October 18, 2011 follow-up letter, January 27, 2012 Supplemental Report, and March 22, 2012 follow-up letter are correct and probative and may be relied on." (Id. at 7.)  FXDD's disagreement with the award does not mean the panel refused to consider FXDD's position.

### V. FXDD's New York Defenses

Manifest disregard of the law is a limited doctrine, which requires "something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law." Jock, 646 F.3d at 122 n.1 (internal quotations omitted).  The court must consider "first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Id. (internal quotations omitted).  An award will be confirmed if there is even a "barely colorable justification" for the outcome reached.  Schwartz, 655 F.3d at 452.  "Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."  Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir. 2003).

FXDD argues that the arbitrators acted in manifest disregard of New York law by failing to entertain the barrage of theories that FXDD claims absolves it of payment: waiver, estoppel, ratification, account stated and laches. (Dkt. No. 14, ¶¶ 80, 83, 84.)[7]  But the arbitrators are not called upon to write a law review article on these topics; it is sufficient if the decision is consistent with the parties' Agreement.  The Court can easily infer a valid basis for the arbitrators' decision not to apply FXDD's claimed defenses to bar recovery.  FXDD only surmises that PT knew about the payment deficiencies based on PT's receipt of daily and

---

[7] The Agreement specified that New York law would govern their disputes.  (Dkt. No. 1 Ex. A ¶ 27.)

monthly rebate reports.  (Id. ¶ 86.)  If, as PT contends, it did not in fact possess specific knowledge of FXDD's failure to pay or underpayment, it could not have earlier interposed its claims, and FXDD's defenses would not apply.  See Bakalar v. Vavra, 2012 U.S. App. LEXIS 21042, at *3 (2d Cir. 2012) ("In order to prevail on laches, [the defendant] had to show that . . . . [the complainants] were aware of their claim . . . . or should have been aware of their potential . . . rights . . . ."); Capitol Records, Inc. v. Naxos of Am., Inc., 372 F.3d 471, 482 (2d Cir. 2004) (quoting Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 430 N.Y.S.2d 179, 187 (N.Y. App. Div. 4th Dep't 1980)) ("Under New York law, a claim of waiver requires proof of an 'intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.'"); Babbit v. Vebeliunas (In re Vebeliunas), 332 F.3d 85, 93-94 (2d Cir. 2003) ("Under New York law, the elements of equitable estoppel are with respect to the party estopped . . . knowledge of the real facts . . . .").  As for FXDD's argument that the arbitrators' award was impermissibly based on speculative damages, as explained above, the arbitrators had a basis for finding that Titus' calculations reflected actual damages with reasonable certainty.

### VI. Pre- and Post-Judgment Interest

In addition to confirmation of the arbitrators' award of post-award interest, PT requests that the Court separately grant "pre-judgment interest on the entire judgment of nine percent (9%) per annum from July 20, 2012 [the date of the award] until PT is paid in full . . . ."  (Dkt. No. 1 at 1, 8; Dkt. No. 18 at 25.)  While styled as pre-judgment interest in the petition, it is clear that the additional relief PT seeks is both pre- and post-judgment interest.  PT's request for separate pre-judgment interest is denied.

To the extent PT's request for pre-judgment interest refers to pre-award interest, the Court will not grant interest that the arbitrators in this action explicitly denied.  (Dkt. No. 1 Ex. B, at

14

10.); see also C.P.L.R. § 5001, Gafner & Shore, LLP v. Witham, 2011 U.S. Dist. LEXIS 2622, at *18 (S.D.N.Y. 2011). By contrast, the arbitrators permitted the recovery of post-award interest. (Dkt. No. 1 Ex. B, at 10.) The Court's confirmation of the award will include post-award interest at a rate of 9% specified in the arbitrators' opinion from July 20, 2012 to the date of entry of judgment.[8] From the date of entry of judgment, interest will run pursuant to 28 U.S.C. § 1961 at the rate specified by the statute until payment in full.[9]

## CONCLUSION

For the foregoing reasons, PremiereTrade Forex, LLC's petition to confirm the award is GRANTED. Specifically, the Court confirms Category 1 and Category 2 damages in the amount of $945,612.74, costs in the amount of $177,346.32, attorney's fees in the amount of $122,040.00 (totaling $1,244,999.06), post-award, pre-judgment interest on the aforementioned total at 9% from July 20, 2012 to the date of entry of judgment; and grants post-judgment interest at a rate provided by 28 U.S.C. § 1961 from the date of entry of judgment until payment. The Clerk of the Court is directed to calculate the interest accordingly, and enter judgment in favor of PremiereTrade Forex, LLC.

Dated: New York, New York
May 16, 2013

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[8] Nine percent is the appropriate interest rate under New York law for pre-judgment interest. See N.Y.C.P.L.R. §§ 5002, 5004.

[9] In a diversity action to confirm an award, the post-judgment rate is calculated in accordance with the federal rate under 28 U.S.C. § 1961(a). Gafner & Shore, LLP v. Witham, 2011 U.S. Dist. LEXIS 2622, at *19 (S.D.N.Y. 2011); see Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 269 (2d Cir. 1989).